UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE INDEPENDENT COLLEGES ASSOCIATION, MAINE PRESS ASSOCIATION, NETCHOICE, and REED ELSEVIER INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR JOHN BALDACCI, ATTORNEY GENERAL JANET MILLS, in their official and individual capacities, and JOHN DOE, <br><br> Defendants. | Civil Action No.: |

## VERIFIED COMPLAINT

### INTRODUCTION

1.      Plaintiffs Maine Independent Colleges Association, Maine Press Association, NetChoice, and Reed Elsevier Inc. ("Reed Elsevier") (collectively, the "Plaintiffs") seek a declaratory judgment against defendants Governor John Baldacci, Attorney General Janet Mills, and John Doe (collectively the "Defendants"), declaring that Public Law 2009, Chapter 230[1] ("Chapter 230" or the "Law") (1) violates the First Amendment of the United States Constitution, (2) violates the Dormant Commerce Clause of the United States Constitution, and (3) is preempted by the Children's Online Privacy Protection Act (COPPA) (codified at 15 U.S.C. § 6501 *et seq.*).  Plaintiffs also seek preliminary and permanent injunctive relief prohibiting enforcement of Chapter 230.  Chapter 230 is strikingly overbroad and reaches well

---

[1]      Absent relief, Chapter 230 will be codified at 10 M.R.S.A. § 9551 *et seq.*  Citations hereinafter refer to sections that will be codified if Chapter 230 becomes effective.

beyond its stated and intended purpose to protect minors' sensitive medical information from marketers.  A copy of Chapter 230 is attached as <u>Exhibit 1</u>.

2.      Chapter 230 strikes at the heart of the Plaintiffs' First Amendment rights to free speech.  It prohibits the Plaintiffs from collecting, transferring, or using information from or about minors or from using that information for non-commercial or commercial speech; it further subjects the Plaintiffs to private class action lawsuits for money damages for engaging in these protected activities.  Even if the Attorney General elects not to enforce the Law and even if the Maine Legislature pledges to amend it, individuals such as John Doe may sue at any time after the Law takes effect, thereby creating an impermissible chilling effect on constitutionally protected speech and on interstate commerce and forcing businesses to cease operating in Maine.

<u>THE PARTIES</u>

3.      Plaintiff Maine Independent Colleges Association ("MICA") is an association of all 11 not-for-profit colleges and universities in the State of Maine, with a strong interest in its members' ability to recruit students to attend their institutions.  Chapter 230 will significantly interfere with these colleges' recruiting efforts.

4.      Plaintiff Maine Press Association ("MICA") is the trade association for paid circulation newspapers across the State of Maine, with 30 members, both large daily newspapers and small weekly newspapers.  Its members publish stories on a daily basis identifying minors by name.  Chapter 230 will significantly affect MPA's members right to publish information and their readers' right to receive it.

5.      Plaintiff NetChoice is a national coalition [unincorporated association] of online businesses and trade associations who share the goal of promoting choice, commerce, and

convenience on the Internet.  Chapter 230 will significantly disrupt the business of, and impose significant additional costs and potential liability on, NetChoice's members.

6.     Plaintiff Reed Elsevier[2] is a world leading provider of professional information and online workflow solutions in the science, medical, legal, risk information and analytics, and business sectors.  LexisNexis is a division of Reed Elsevier.  LexisNexis is a leading provider of legal, tax, regulatory, risk information and analytics, and business information solutions to professional, corporate and government customers worldwide, and it obtains records from public sources throughout Maine.  Chapter 230 will significantly disrupt the business of, and impose significant additional costs and potential liability on, Reed Elsevier.

7.     Defendant John Baldacci is the Governor of the State of Maine.  Governor Baldacci is named as a defendant in his official and individual capacities.

8.     Defendant Janet Mills is the Attorney General of the State of Maine.  General Mills is named as a defendant in her official and individual capacities.

9.     Defendant John Doe is an individual with the standing and intent to exercise Chapter 230's private right of action against the Plaintiffs.

<u>JURISDICTION AND VENUE</u>

10.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331, and the remedy of declaratory relief may be granted pursuant to 28 U.S.C. § 2201 because an actual controversy exists between the parties.  This action arises under the Constitution of the United States.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

---

[2]    Reed Elsevier joins all aspects of this Complaint except for the request for relief from "marketing" restrictions set forth in Chapter 230 because it does not engage in such marketing.

3

<u>PROVISIONS OF CHAPTER 230</u>

12.     On June 2, 2009, Governor Baldacci signed Chapter 230 into law.  Chapter 230 is

scheduled to become effective on September 12, 2009.

*Chapter 230 Prohibits the Collection of Information*

13.     Chapter 230 makes it unlawful to "knowingly collect or receive health-related

information or personal information for marketing purposes from a minor without first obtaining

verifiable parental consent of that minor's parent or legal guardian."[3]

14.     The term "personal information" is defined broadly to mean "individually

identifiable information," including (1) an individual's first name, or first initial, and last name;

(2) a home or other physical address; (3) a Social Security number; (4) a driver's license number

or state identification card number; and (5) information concerning a minor that is collected in

combination with an identifier described above.[4]  The Law therefore prohibits the Plaintiffs from

collecting even a minor's name for marketing purposes.

15.     The use of the word "including" suggests that the data elements enumerated

above are not exhaustive.  An e-mail address, for example, would likely be encompassed by the

definition of "personal information" as well.

16.     The term "health related information" is defined to mean "any information about

an individual or a member of the individual's family relating to health, nutrition, drug or

medication use, physical or bodily condition, mental health, medical history, medical insurance

coverage or claims or similar data."  The term "health-related information" includes

"information about an individual," regardless of whether that information is personally

identifiable health information.  It therefore would include information regarding individual food

---

[3] § 9552(1).
[4] § 9551(4)(A-E).

preferences, individual performances in sports contests, and purchases of over-the-counter medicines, even if the data were aggregated and could not be used to identify the individuals in question.

*Chapter 230 Prohibits the Transfer and Sale of Information*

17.    Chapter 230 makes it unlawful to "sell, offer for sale or otherwise transfer to another person health-related information or personal information about a minor if that information":  (1) was unlawfully collected, as described in paragraphs 10-11 above; (2) individually identifies the minor; or (3) will be used to engage in "predatory marketing," as described below.[5]

18.    This prohibition applies even where the information was obtained from someone other than the minor, such as from public records, a doctor, school, or parent and even where the information will not even be used for marketing purposes (instead it might be used for fraud investigations or insurance-related purposes which are uses that involve Plaintiff Reed Elsevier or its affiliates).  The restriction applies even where Plaintiffs have obtained, through great effort and expense, the verifiable parental consent of the minor's parent or legal guardian to collect or transfer the minor's personal information.  Finally, this prohibition applies to information that was lawfully collected before the effective date of Chapter 230.

*Chapter 230 Prohibits the Use of Information for Commercial Purposes*

19.    Chapter 230 makes it unlawful to "use any health-related information or personal information regarding a minor for the purpose of marketing a product or service to the minor or promoting any course of action for the minor relating to a product."[6]  Any such use is deemed

---

[5] § 9552(2)(A-C).
[6] § 9553.

"predatory marketing."[7]  This proscription applies even where the Plaintiffs obtain the verifiable parental consent of the minor's parent or legal guardian to recommend a course of action for a minor that may relate to a product.  It applies even where such information is collected and/or used in compliance with COPPA.

20.    The Plaintiffs will remain liable for predatory marketing regardless of whether the Plaintiffs themselves collected the personal information from a minor.  The mere fact that Plaintiffs use "personal information regarding a minor" under this provision exposes them to liability, even if the information was collected before the effective date of the Law.

*Chapter 230 Creates a Private Right of Action*

21.    Violations of Chapter 230 are enforceable through a private right of action with recovery of actual or statutory damages of up to $250 per violation, whichever is greater, plus attorneys' fees.[8]  The court "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under paragraph B" where a defendant "willfully or knowingly" violates the Law's prohibitions.

22.    Violations could be enforced under Maine law through class action lawsuits for very large statutory damages.

23.    Additionally, violations of the Law constitute an unfair trade practice under Maine law, which is also enforceable by private litigants.

*Chapter 230 Regulates Conduct Occurring Outside of Maine*

24.    The Law's prohibitions extend beyond Maine.  They compel website operators, advertisers and marketers outside of Maine, including several of the Plaintiffs, to conform their conduct to Maine's overbroad regulatory scheme.

---

[7] *Id.*
[8] § 9554(2)(B).

6

25.     The Law is framed so broadly that major businesses outside Maine, including the Plaintiffs, are considering suspending business operations in Maine.  There is often no reliable way to ascertain whether information that is being collected or used pertains to a Maine minor. The Law would thus adversely affect all use of personal information and health-related information, since each individual use of such information could expose individuals and entities to significant liability under the Law.

CHAPTER 230'S IMPACT ON THE PLAINTIFFS

*Maine Independent Colleges Association*

26.     The Colleges and universities who are members of MICA - - Bangor Theological Seminary, Bates College, Bowdoin College, Colby College, College of the Atlantic, Husson College, Maine College of Art, Saint Joseph's College of Maine, Thomas College, Unity College, and the University of New England - - have about 16,000 students.  They routinely send marketing materials about their institutions, including the application forms, to minor students identified as a result of the college receiving their standardized test scores and identifying information.  Under section 9552(2) the standardized testing company could not transfer any information to the colleges that would individually identify any minor.  Additionally, under section 9552(1), a college would be prohibited from receiving any information from a minor interested in attending a college without first obtaining parental consent if the personal information would then be used to market the college to the minor.  MICA believes its members have a right to contact or be contacted by minor students regarding their interest in college.  If this law were to go into effect, it would unduly infringe on the rights of minor students who are seeking a post-secondary education and the rights of the colleges who seek to educate them.

*Maine Press Association*

27.    The members of the MPA routinely cover youth sports, education (including the "honor roll"), youth events, and other activities involving minors, including, most recently, the tragedy of a seven year old being swept out to sea at Acadia National Park by a rogue wave. Chapter 230 prohibits the "transfer" of personal information about a minor, including the minor's name, and would prevent MPA's members from publishing information and its readers from receiving it relating to all these types of activities.  MPA also fears that this clause could be construed to prohibit its members from receiving personal information broadly for any purpose of selling goods or services.  The Act prohibits newspapers from receiving the name and address of a minor for activities as core to our First amendment rights as subscribing to publications, or submitting letters to the editor.  Before publishing a letter to the editor newspapers routinely confirm that the author and address given are genuine.  The MPA believes that its members have the right to ask minors for their names and addresses for legitimate purposes, such as confirming a subscription or a letter to the editor.

*Reed Elsevier*

28.    Reed Elsevier databases, including those of its LexisNexis business, contain information about individuals who are under the age of eighteen.

29.    Neither Reed Elsevier nor LexisNexis are companies that use health-related information to market to minors.  However, the provisions of Chapter 230 are broad and overreaching, and these provisions would adversely impact on products furnished by LexisNexis for important societal benefits.  Certain LexisNexis products are offered for sale to Maine entities and may include the name of a minor and may identify the minor individually.  These products are important to clients who use these materials for law enforcement purposes, for the

8

prevention of frauds, for the accurate identification of individuals, and for the notification of individuals about news events and factual occurrences.  Some Maine entities that use these LexisNexis products include the Maine Bureau of Motor Vehicles, the Maine Department of Public Safety, the State of Maine Bureau of Revenue Service, and the Maine Bureau of Child & Family Services.

30.    Certain LexisNexis databases include criminal records, driver's license data, and motor vehicle records data, and these databases are an important tool used by law enforcement officials, including Maine law enforcement.

31.    One example of a LexisNexis product that could be affected by the implementation of Chapter 230 is Accurint for Law Enforcement, a product used by law enforcement officials across the nation to identify criminals, to find witnesses, and to prevent crimes.  A Maine law enforcement officer can use Accurint for Law Enforcement to determine a driver's name and criminal history during a motor vehicle stop, track minors who are registered sex offenders, and find minors who are witnesses for court cases.   Enforcement of Chapter 230 could jeopardize all of these uses.  Maine entities that use Accurint for Law Enforcement include the Maine State Police and police departments in Bath, Portland, Carrabassett Valley, Berwick, Ogunquit, Bridgton, York Town, Scarborough, Lisbon, Livermore Falls, Biddeford, Saco, Sanford and the City of Waterville.

32.    LexisNexis maintains information used by financial institutions to comply with the USA Patriot Act, Pub. L. No. 107-56, 115 Stat. 272 (2001).  The Patriot Act requires financial institutions to take steps to identify individuals who set up financial accounts. Financial institutions use LexisNexis products to verify the identity of account applicants, including minors.  This practice could not continue under Chapter 230's provisions.

33.     LexisNexis carries branded news content from around the globe, ranging from major dailies to small, weekly regional papers in the U.S., including news sources from Maine newspapers.  LexisNexis relies on publishers and aggregators to deliver a broad spectrum of news, and regional news certainly carries names of children as published in these public facing sources.  If Chapter 230 were to become effective, LexisNexis would have to indemnify itself against Maine publishers who might inadvertently deliver content containing information regarding minors in technical violation of the Law.  As currently drafted, publishing organizations will not have time to establish filters to capture such information before the law becomes effective.  Maine publishers with content on these databases include the Bangor Daily News, the Portland Herald Press, the Sun Journal and the Kennebec Journal.

34.     LexisNexis maintains legal databases whose content includes pleadings, judgments, and verdicts.  These documents may contain children's names when children are involved in the proceeding covered.  These items are generally a matter of public record.  The application of Chapter 230 could put the ability to share and transfer these important court documents in jeopardy.

35.     LexisNexis receives updates from the Maine Bureau of Motor Vehicles ("BMV") containing information about drivers of all ages.  LexisNexis provides this information to insurance companies and agents who utilize such information to price and underwrite automobile insurance policies, to identify drivers and to fight insurance fraud.  For example, the LexisNexis Additional Driver Discovery (A.D.D.) product uses Maine BMV data to identify potential additional drivers (age 15 or older) in households to help eliminate fraud.  Insurance agents and insurance carriers use this product to inquire whether drivers need to be added to policies for a household.

36.     Similarly, the LexisNexis Youthful Driver Discovery (Y.D.D.) product also containing Maine BMV data, allows insurance carriers to be alerted that a newly licensed youth (ages 15-25) is present at a particular address.  Again, insurance companies use this information to help determine when a households' policy needs to be updated.  Under the provisions of Chapter 230, LexisNexis could be precluded from utilizing the driver's license data of minors in these databases, and insurance companies in Maine could be impeded in their efforts to insure eligible drivers in the state.

37.     The personal information of minors may appear in the death records that are part of other databases compiled by LexisNexis.  These death records are used by businesses and others to ensure that the identities of deceased individuals are not used by potential wrong-doers to establish false identities.  The provisions of Chapter 230 put in jeopardy our company's ability to convey this important, factual information to prevent frauds against Maine consumers.

38.     The primary issue that concerns Reed Elsevier is the unconstitutional restriction that makes it illegal to sell, offer for sale or otherwise transfer to another person, personal information about a minor if that information individually identifies the minor.  §9552(2).  This unlawful provision applies regardless of how an entity acquired the data and regardless of the non-marketing lawful use for which the data are used.

*NetChoice*

39.     NetChoice members include the nation's leading platforms for Internet communities and e-commerce, along with several trade associations and several thousand small online businesses and online consumers.

40.     Many NetChoice members passively collect information for marketing and advertising, both on a personally identifiable and non-personally identifiable basis.

41.    The Law will effectively prevent prospective Maine customers from registering with NetChoice member websites, even though these websites may have no physical presence in Maine.  There is no reasonably available mechanism to determine and verify the identity, age, and parental relationships of individuals aged 14-17 who seek to register for online services offered by NetChoice members.  Attempts to build and operate mechanisms to authenticate identities and verify parental consent would add material costs for NetChoice members.

42.    As a result of Chapter 230, NetChoice members could be forced to cease certain business activities, and, as a result, would experience a reduction of users and revenue.

43.    If NetChoice members did not cease this activity, the Law would hold them liable for statutory violations, since no foolproof methods exist for authenticating individual identities and determining parental consent during information collection.  Accordingly, NetChoice members will face indeterminable liability due to the law's private right of action and minimum statutory damages.

44.    Given the potential liability they face from a potential enforcement action under Chapter 230 by John Doe and others like him, all of the Plaintiffs will be forced either to alter their business practices at significant expense or cease conducting business in the State of Maine. As a result, the Plaintiffs will suffer irreparable harm from the Law's existence, even in the absence of an enforcement action by the Attorney General.

**First Claim for Relief**
**(Declaratory Judgment – First Amendment)**

45.    The Plaintiffs hereby restate, reallege, and incorporate by reference the allegations in paragraphs 1 through 44 above.

46.     Chapter 230 violates the First Amendment's protection of free speech and association by restricting the ability of minors to obtain health-related information.

47.     Chapter 230 will also reduce the audience of the speaker's message by subjecting entities that collect such information to age verification mandates.   This will hinder the ability of adults to access or receive certain content anonymously, as such mandates will encourage entities to self-censor themselves to avoid offering content that could be considered "directed at" minors, and chill many entities from collecting health-related or personal information.

48.     Maine can protect minors from coercive or deceptive marketing practices through less restrictive alternatives.

49.     The Law's prohibitions against collecting, transferring, or using information from or about minors impose a content-based restriction on speech that is not narrowly tailored to serve a compelling state interest.

50.     In addition, the Law impermissibly restricts commercial speech by drying up a major source of information used for commercial speech.

51.     Chapter 230 will cause irreparable injuries to the Plaintiffs by infringing on their First Amendment rights.

52.     An actual and ripe controversy exists between the parties concerning the constitutionality of Chapter 230.

53.     The Plaintiffs are entitled to a declaration that Chapter 230 violates the First Amendment of the United States Constitution.

### Second Claim for Relief
### (Declaratory Judgment – Dormant Commerce Clause)

54.     The Plaintiffs hereby restate, reallege and incorporate by reference the allegations in paragraphs 1 through 53 above.

13

55.     Chapter 230 effectively regulates Internet commerce that occurs wholly outside of Maine, irrespective of whether such commerce has any effects within Maine.

56.     In many instances, marketers and advertisers will be compelled to comply with Maine's law, despite having no nexus to the state or its residents, in order to protect themselves from class action lawsuits.

57.     Chapter 230 conflicts with statutory regimes under both federal and other states' laws, rendering compliance with the resulting patchwork quilt of online marketing laws impracticable.

58.     Chapter 230 imposes burdens on interstate commerce that exceed any putative local benefits and does so despite the fact that other means – besides a categorical prohibition on certain speech – are available to prevent predatory marketing.

59.     Chapter 230 will cause irreparable damage to the Plaintiffs' interstate commercial activities.

60.     An actual and ripe controversy exists between the parties concerning the constitutionality of Chapter 230.

61.     The Plaintiffs are entitled to a declaration that Chapter 230 violates the Dormant Commerce Clause of the United States Constitution.

### Third Claim for Relief
**(Declaratory Judgment – Preemption By COPPA)**

62.     The Plaintiffs hereby restate, reallege and incorporate by reference the allegations in paragraphs 1 through 61 above.

63.     Chapter 230 also conflicts with, and is preempted by, COPPA.  Unlike Chapter 230, COPPA is limited to children under the age of 13 and permits the use of a child's personal information for marketing purposes with the consent of the child's parent or guardian.

64.    An actual and ripe controversy exists between the parties concerning the constitutionality of Chapter 230.

65.    The Plaintiffs are entitled to a declaration that Chapter 230 violates the Supremacy Clause of the United States Constitution.

## Fourth Claim for Relief
### (42 U.S.C. § 1983)

66.    The Plaintiffs hereby restate, reallege and incorporate by reference the allegations in paragraphs 1 through 65 above.

67.    Chapter 230 will, if allowed to take effect, work a violation of the Plaintiffs' constitutional and statutory rights under color of state law.

68.    The Plaintiffs are entitled to prospective injunctive relief against the Governor and Attorney General prohibiting them from enforcing Chapter 230.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court:

a)    enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that Chapter 230 violates the First Amendment and Dormant Commerce Clause of the United States Constitution and is preempted by COPPA;

b)    enter a preliminary and, after trial, a permanent injunction prohibiting the enforcement of Chapter 230 by either Governor Baldacci and Attorney General Mills or John Doe;

c)    award the Plaintiffs attorney's fees for this action; and

d)    grant the Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted,

MAINE INDEPENDENT COLLEGES
ASSOCIATION, MAINE PRESS
ASSOCIATION, REED ELSEVIER INC.,
and NETCHOICE,

Of Counsel for:                                    By their attorneys,


MAINE INDEPENDENT COLLEGES                /s/ James T. Kilbreth
ASSOCIATION                               James T. Kilbreth
MAINE PRESS ASSOCIATION                   Michael V. Saxl
                                          VERRILL DANA LLP
Jonathan S. Piper                         PO Box 586
Sigmund D. Schutz                         One Portland Square
Daniel W. Walker                          Portland, ME  04112-0586
PRETI FLAHERTY BELIVEAU &                 (207) 774-4000 *(telephone)*
PACHIOS LLP                               (207) 774-7499 *(fax)*
One City Center
Portland, ME  04101                       Bruce E. Falby, Esq. (BBO #544143)
(207) 791-3000 *(telephone)*              Brooks Ames, Esq. (BBO #641192)
(207) 791-3111 *(fax)*                    Matthew Iverson, Esq. (BBO # 653880)
                                          DLA PIPER LLP (US)
                                          33 Arch Street, 26th Floor
                                          Boston, MA  02110
                                          (617) 406-6000 (*telephone*)
                                          (617) 406-6100 (*fax*)


                                          Jim Halpert, Esq.
                                          David Lieber, Esq.
                                          Micah R. Thorner, Esq.
                                          DLA PIPER LLP (US)
                                          500 Eighth Street, NW
                                          Washington, DC  20004
                                          (202) 799-4000 (*telephone*)
                                          (202) 799-5000 (*fax*)

16

**VERIFICATION AS TO FACTS CONCERNING PLAINTIFF**
**MAINE INDEPENDENT COLLEGES ASSOCIATION**

I, <u>Danielle Ripich</u>, verify that I have read the foregoing Verified Complaint and the facts stated therein concerning plaintiff Maine Independent Colleges Association are true based on my own knowledge, information, and belief.

Sworn to under the pains and penalties of perjury this 26th day of August, 2009.

/s/ Danielle Ripich
President, University of New England
President, Maine Independent Colleges Association

**VERIFICATION AS TO FACTS CONCERNING PLAINTIFF**
**MAINE PRESS ASSOCIATION**

I, <u>Michael D. Lange</u>, verify that I have read the foregoing Verified Complaint and the facts stated therein concerning plaintiff Maine Press Association are true based on my own knowledge, information, and belief.

Sworn to under the pains and penalties of perjury this 26th day of August, 2009.

/s/ Michael D. Lange
Executive Director
Maine Press Association

**VERIFICATION AS TO FACTS CONCERNING PLAINTIFF**
**REED ELSEVIER INC.**

I, <u>Henry Z. Horbaczewski</u>, verify that I have read the foregoing Verified Complaint and the facts stated therein concerning plaintiff Reed Elsevier Inc. are true based on my own knowledge, information, and belief.

Sworn to under the pains and penalties of perjury this 26th day of August, 2009.

/s/ Henry Z. Horbaczewski

## <u>VERIFICATION AS TO FACTS CONCERNING PLAINTIFF</u>
## <u>NETCHOICE</u>

I, <u>Steve DelBianco</u>, verify that I have read the foregoing Verified Complaint and the facts stated therein concerning plaintiff NetChoice are true based on my own knowledge, information, and belief.

Sworn to under the pains and penalties of perjury this 26th day of August, 2009.


/s/ Steve DelBianco

1674305_1.DOC