UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| MAINE INDEPENDENT COLLEGES ASSOCIATION, MAINE PRESS ASSOCIATION, NETCHOICE, and REED ELSEVIER INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR JOHN E. BALDACCI and ATTORNEY GENERAL JANET T. MILLS, in Their Official and Individual Capacities, and JOHN DOE,<br><br>Defendants. | CIVIL ACTION NO.: 09-cv-00396-JAW |

**STATE DEFENDANTS' MOTION TO DISMISS COMPLAINT,
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(1), the state defendants, the Governor and the Attorney General, hereby move to dismiss plaintiffs' Complaint. Plaintiffs seek to challenge the constitutionality of a law, due to take effect on September 12, 2009, that is enforceable by the Attorney General and that creates a private cause of action. The Attorney General has publicly stated, and hereby confirms, that she will not enforce this law, to which the Governor concurs. Therefore, the claims against her and the Governor should be dismissed by virtue of the State of Maine's sovereign immunity and for lack of justiciability.

That plaintiffs have sued a "John Doe," a mythical person who plaintiffs imagine is intent on bringing a private cause of action, does not change the result – plaintiffs cannot create a justiciable controversy simply by creating, and then suing, an imaginary person. If the rule were otherwise, limitations of standing and ripeness, and the important purposes they serve, could

always be avoided through the addition of a make-believe defendant, and federal courts would routinely end up issuing advisory opinions, a result that is essentially what plaintiffs seek here. In support of their motion, defendants rely on the following Memorandum of Law:

## MEMORANDUM OF LAW

### Background

On September 12, 2009, Public Laws 2009, Chapter 230, "An Act to Prevent Predatory Marketing Practices Against Minors," will take effect. Generally speaking, Chapter 230 restricts the collection, receipt, transfer, and use of health-related and other personal information regarding minors. *See* Exhibit 1 to Plaintiffs' Complaint. Chapter 230 is enforceable by the Attorney General. *Id*. Additionally, private individuals may sue for violations of Chapter 230 and, in such suits, may obtain injunctive relief, actual damages or $250 for each violation (whichever is greater), and reasonable attorney's fees and costs. *Id*.[1]

Chapter 230 was introduced into the Legislature in March 2009 as LD 1183 and was referred to the Business, Research and Economic Development Committee. *See* "Actions for LD 1183," attached hereto as Exhibit A.[2] A review of the Committee's file reveals that the bill was unopposed – none of the plaintiffs nor anyone else spoke out against the bill. *See* Affidavit of Alice Sproul, ¶ 3, and Exhibit 1 thereto. With no opposition, the bill passed handily in the House –

---

[1] If a court finds that the defendant willfully or knowingly violated Chapter 230, the court, in its discretion, may award treble damages. *Id*.

[2] In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court may consider factual information outside of the pleadings. *See, e.g., Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001) ("the court enjoys broad authority to . . . consider extrinsic evidence . . . to determine its own jurisdiction"). Moreover, even in ruling on Rule 12(b)(6) motions, a court may consider documents the authenticity of which are not disputed and official public records. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001). In any event, the extraneous facts referred to in this paragraph and the next one are not necessary to the disposition of the motion to dismiss, but are provided simply to aid the Court in understanding the background of the statute at issue.

on May 26, 2009, 144 representatives voted in favor of the bill and none voted against it. *See* Exhibit A. The bill passed in the Senate the next day, *id*., and it was signed by the Governor on June 2, 2009. Complaint, ¶ 12.

Several weeks ago, after being advised that various entities were preparing a legal challenge to Chapter 230, the Attorney General and her staff carefully reviewed both the law and the arguments the challengers indicated they were prepared to make. After this review, the Attorney General determined that she shared some of the challengers' concerns over the implications of the law on the exercise of First Amendment rights, especially the rights of minors to access information. The Attorney General also learned that the Legislature will be revisiting the law when it convenes again in January 2010.[3] The Attorney General has therefore decided that she will not enforce Chapter 230. Plaintiffs simply are not presently under any threat of enforcement by the Attorney General.

## Argument

### I. Because the Attorney General Is Not Enforcing Chapter 230, the Claims Against the State Officials Are Not Ripe and Are Barred by the State's Sovereign Immunity.

Pursuant to the Eleventh Amendment and principles of sovereign immunity, a state may not be sued in federal court unless either the state has expressly consented to suit or Congress has explicitly abrogated the state's immunity in those circumstances where such abrogation is effective. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Ford Motor Co. v. Department of Treasury of*

---

[3] On August 28, 2009, Senate President Libby Mitchell and House Speaker Hannah Pingree announced that they have asked the Legislature's Judiciary Committee "to meet and review questions that have been raised" about the constitutionality of Chapter 230. *See* Press Release, attached hereto as Exhibit B.

3

*State of Ind.*, 323 U.S. 459, 464 (1945); *Hans v. Louisiana*, 134 U.S. 1 (1890). "This jurisdictional bar applies regardless of the nature of the relief sought." *Halderman*, 465 U.S. at 100; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought."); *Cory v. White*, 457 U.S. 85, 90-91 (1982) (sovereign immunity is not limited to claims for monetary damages). The State of Maine has not consented to this lawsuit, and Congress has not effectively abrogated the states' immunity from claims of the type brought by plaintiffs. Thus, the State itself is immune from plaintiffs' claims.

Presumably recognizing this, plaintiffs did not attempt to sue the State, but instead seek to sue the State's Governor and Attorney General.[4] It is indeed true that the Supreme Court has recognized an "important exception" to the "general rule" of sovereign immunity and held that pursuant to *Ex parte Young*, 209 U.S. 123 (1908), "a suit challenging the constitutionality of a state official's action is not one against the State." *Halderman*, 465 U.S. at 102. This exception, though, only applies when enforcement action by the state official is imminent. In *Ex parte Young* itself, the Court stated that

> individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, <u>and who threaten and are about to commence proceedings</u>, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex parte Young*, 209 U.S. at 155-56 (emphasis added).[5] Because of this imminence requirement,

---

[4] The fact that plaintiffs purport to sue the Governor and Attorney General in both their official and individual capacities makes no difference. The plaintiffs are not seeking to impose personal liability on either official, and it is clear that the State itself is the "real, substantial party in interest." *Halderman*, 465 U.S. at 101-02 & n.11.

[5] Two years later, the Supreme Court, in applying this doctrine, explicitly noted that the plaintiff had alleged, and the state officials had admitted, that the state officials had "threatened and were about to commence proceedings" to recover penalties under the statute at issue. *Western Union Tel. Co. v. Andrews*, 216 U.S. 165, 166 (1910).

federal courts have repeatedly dismissed claims against state officials that seek injunctive and declaratory relief from allegedly unconstitutional state statutes when there was no showing that the officials had enforced or threatened to enforce the statutes. While this is sometimes treated as a justiciability or "case or controversy" requirement rather than an issue of sovereign immunity, the result is the same: the challenge to the statute is rejected.

For example, in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), several airlines sued state Attorneys General to obtain declaratory relief that state statutes regulating fare advertisements were preempted by federal law, and to enjoin the Attorneys General from enforcing the statutes. The Court held that the airlines could challenge only those provisions of the state statutes that the Attorneys General had threatened to enforce, and could not challenge other provisions. *Id*. at 380-383. As the Court noted, "*Ex parte Young* . . . speaks of enjoining state officers '<u>who threaten and are about to commence proceedings</u> . . . .'" *Id*. at 382 (emphasis in original). The Court held that when a plaintiff brings a lawsuit as a "first strike" to prevent a state from bringing an enforcement action, "the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury." *Id*.

Beyond *Ex parte Young* issues, the lack of any threat of state enforcement presents insurmountable Article III justiciability barriers. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Poe v. Ullman*, 367 U.S. 497, 499 (1961) (holding that constitutional challenge to state law prohibiting use of contraceptives not justiciable where state had "tacitly" agreed not to enforce the law). In *Babbitt*, a labor union and others challenged a state statute regulating farm labor practices and which provided for criminal penalties for violations of the statute. *Id*. at 292-93. The Court first addressed "the threshold question whether appellees have alleged a case or controversy within the meaning of Art. III of the

5

Constitution or only abstract questions not currently justiciable by a federal court." *Id*. at 297. The Court held that for there to be a "case or controversy," the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder . . . ." *Id*. at 298. On the other hand, "'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'" *Id*. at 298 (quoting *Younger* v. *Harris*, 401 U.S. 37, 42 (1971)). The Court ultimately held that plaintiffs' challenge to some of the statute's provisions were justiciable, including one that restricted unions from encouraging consumer boycotts. *Babbitt*, 442 U.S. at 301-02. The Court noted that even though the state had not yet sought criminal penalties for violations of that provision, the state had not "disavowed any intention" of doing so, and plaintiffs were thus "not without some reason in fearing prosecution." *Id*. at 302. Here, of course, the State <u>has</u> disavowed any intention of enforcing Chapter 230, and plaintiffs' challenge is thus not justiciable.

   The First Circuit has likewise recognized that challenges to state statutes must be dismissed on justiciability grounds where there is no allegation that state officials have enforced or threatened to enforce the statute. In *Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979), an oil company sued state officials to obtain a declaration that a state statute was unconstitutional and to enjoin the officials from enforcing the statute. The court held that even if the defendant state officials were capable of enforcing the statute, there was no "case or controversy" within the meaning of Article III. *Id*. at 212-13. The court held that neither declaratory nor injunctive relief is available "where the threat of state action is imaginary, speculative, or chimerical. . . ." *Id*. at 213. Thus, "[i]f a complaint fails to allege, or plaintiff fails to prove, that defendant state officers have ever taken or threatened to take any action with respect to a state statute then there is no

6

'actual controversy' within the Declaratory Judgment Act, and there is 'no case or controversy' within Article III." *Id*. [6] The court concluded that because there was "no showing that defendants intend to enforce" the statute and instead "disclaim[ed] any authority to do so," there was "no actual controversy which this court is empowered by United States Constitution Article III to adjudicate." *Id*; *see also Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (for case to be justiciable, there must be a credible threat of prosecution);[7] *Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999) (same); *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) ("The bottom line is that, as long as a credible threat of prosecution exists, a litigant has standing to mount a pre-enforcement challenge to the facial constitutionality of a statute on the basis that her First Amendment rights arguably are being trammelled."); *McCollester v. Keene*, 668 F.2d 617, 621 (1st Cir. 1982) ("there is no case or controversy unless the plaintiff is subject to something more than a speculative risk of prosecution"). [8]

In sum, regardless of whether it is an element of an *Ex parte Young* action or a justiciability requirement, it is well-established that a federal court has no jurisdiction over a

---

[6] The court held that this rule applies regardless of whether the statute imposes criminal penalties: "No matter what the type of case, federal courts are not empowered to give plaintiff advisory opinions where there is no actual controversy." *Id*. at 313.

[7] The *Mangual* court did say that when it comes to First Amendment challenges to statutes, the evidentiary standard for showing a credible threat of prosecution is "extremely low," and that courts will assume such a threat absent "compelling contrary evidence." *Id*. at 57. Here, the "compelling contrary evidence" is the Attorney General's explicit statement that she will not enforce Chapter 230.

[8] Courts in other jurisdictions have universally recognized that to challenge a state statute, there must be a credible threat of enforcement. *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) ("The requirement that there be some actual or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts."); *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998) ("As *Ex Parte Young* explains, the officers of the state must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act."); *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."), *cert. denied*, 519 U.S. 1149 (1997); *1st Westco Corp. v. School Dist.*, 6 F.3d 108, 113 (3d Cir. 1993) ("A plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiffs.").

7

challenge to a state statute when there is no credible risk of enforcement of the statute. Here, not only have plaintiffs failed to demonstrate that such a credible risk of enforcement exists, but Maine's Attorney General affirmatively has stated that she will <u>not</u> enforce Chapter 230. Thus, plaintiffs may not pursue this action for injunctive and declaratory relief against the Governor or Attorney General. *See Poe*, 367 U.S. at 508 ("If the prosecutor expressly agrees not to prosecute, a suit against him for declaratory and injunctive relief is not such an adversary case as will be reviewed here."); *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) ("affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute prevents a 'threat' of prosecution from maturing into a 'credible' one"); *Gardner*, 99 F.3d 8 at 16-17 (finding a credible threat of enforcement where "[a] representative of the Attorney General refused to disclaim the possibility of enforcement").

Even if the Attorney General did intend to enforce Chapter 230, the Governor would be entitled to dismissal. The Governor has no specific duty to enforce Chapter 230, and his general constitutional duty to "take care that the laws be faithfully executed," Me. Const. Art. V, § 12, does not create the kind of "special relation" between the official and the challenged statute required by *Ex parte Young*. *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001), *cert. denied*, 535 U.S. 904 (2002); *see also Shell Oil Co*, 608 F.2d at 212 ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."); *Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D. N.Y. 1976) (governor's general duty to enforce state laws not sufficient to make him a party to an *Ex parte Young* action).

## II. The Theoretical Possibility of Lawsuits By Private Individuals Does Not Make This Matter Justiciable.

The fact that Chapter 230 creates a private cause of action, and that private citizens might theoretically sue the plaintiffs after September 12, 2009, makes no difference. Federal courts reject attempts by plaintiffs to sue state officials to obtain pre-enforcement review of state laws that contain private causes of actions. Essentially, the courts do not require state officials to defend against theoretical lawsuits that might be brought by private parties against private parties.

In *Fitts v. McGhee*, 172 U.S. 516 (1899), a state passed a law limiting the tolls that could be charged by the owners of a particular bridge, and authorizing private individuals who were charged an excessive toll to sue the owners. The owners, arguing that the law was unconstitutional, sued the state's Governor and Attorney General. *Id*. at 516. The Court held that while a state's sovereign immunity does not prevent private individuals from suing state officials to enjoin them from committing unlawful acts, sovereign immunity does prohibit suing state officials simply to challenge the constitutionality of a state law:

> If, because they were law officers of the State, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the Governor and the Attorney General, based upon the theory that the former as the executive of the State was, in a general sense, charged with the execution of all its laws, and the latter, as Attorney General, might represent the State in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the States of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Id*. at 530.  The Court noted that this rule does not leave private individuals without a remedy because they can simply argue that a statute is unconstitutional as a defense to an action brought under the statute.  *Id*.

More recently, in *Salvation Army v. New Jersey Department of Community Affairs*, 919 F.2d 183 (3d Cir. 1990), the state passed a law, and an agency later promulgated rules, "regulating virtually every aspect of the conduct" of boarding houses.  *Id*. at 186.  The law was enforceable by the state agency and by private individuals.  *Id*. at 187.  The Salvation Army sued state officials, claiming that the "threatened application" of the law would both "chill[] and infringe[]" its First Amendment rights.  *Id*. at 190.  The state agency later notified the Salvation Army that it was exempting it from many of the law's and regulations' requirements.  *Id*. at 191.  The Salvation Army argued that there was still a justiciable controversy because the waiver would not prevent private individuals from bringing actions and that it "remain[ed] 'chilled' by the possibility of such a private suit."  *Id*. at 191.[9]

The Third Circuit rejected this argument, concluding that the "theoretical possibility" of a private lawsuit did not give it jurisdiction.  The court held that "for there to be a justiciable controversy, the court must be in a position to grant effective relief to the plaintiff," and that the Salvation Army had failed to articulate a theory under which "a constitutional adjudication in this proceeding with respect to the waived provisions would bind beneficiaries who have not participated in this proceeding."  *Id*. at 193.  The court then explained that even if such a theory

---

[9] The Salvation Army also argued that there was a justiciable controversy because the agency had no authority to waive the statutory requirements.  *Id*. at 191.  The court rejected this argument for the reason discussed in Section I of this brief – there was no realistic threat of any enforcement action.  Regardless of whether the agency could waive the statutory requirements, it was not going to enforce them.  *Id*. at 192 ("Where the plaintiff seeks a declaratory judgment with respect to the constitutionality of a state statute, even where the attack is on First Amendment grounds, there must be a 'real and immediate' threat of enforcement against the plaintiff.").  The court noted that the record reflected "not only the absence of a threat of enforcement but an express assurance that there will be no enforcement against [the Salvation Army] of the waived provisions of the statute."  *Id*. at 192.  Here, plaintiffs have the same assurance.

10

existed, the Salvation Army had not demonstrated that it had actually been threatened with a private cause of action or presented evidence that the threat of a private suit would have a "perceptible effect on the exercise of its First Amendment rights." *Id*. at 193.[10] The court thus concluded that there was no "case or controversy" with respect to claims based on the waived requirements. *Id*. at 193-94.

Similarly, courts have addressed challenges to statutes authorizing private individuals to bring tort claims against physicians who perform certain abortions, and these courts have uniformly rejected the challenges for lack of justiciability. In *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), for example, a state law made abortion providers liable for any subsequent medical costs incurred as a result of an abortion performed on a minor without parental consent. An abortion provider sued various public officials who oversaw public health care facilities to obtain a declaration that the statute was unconstitutional and to obtain injunctive relief. *Id*. at 1152. The Tenth Circuit held that the plaintiff lacked standing to bring the lawsuit. *Id*. at 1153. The court correctly recognized that, "as an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a 'case or controversy' that may be resolved by the federal courts." *Id*. at 1154 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff must have suffered an injury that is "actual or imminent" and not "conjectural or hypothetical," there must be a "causal connection between that injury and the challenged action of the defendant," and it must be likely that "a favorable judgment will redress plaintiff's injury." *Id*. at 1154.

The court noted that the first criterion was met because plaintiff had been injured by the law in that it had begun turning away minor patients who sought abortions without parental

---

[10] The court stated that the prospect that the Salvation Army would alter its operations out of fear of private lawsuits "seems highly unlikely." *Id*. at 193.

11

consent. *Id*. at 1155.  But, the court held that plaintiff failed to demonstrate that this injury was caused by the defendants:  "[Plaintiff] submitted evidence that its refusal to offer abortions absent parental consent was a response to the enactment of [the statute], not a response to any actions of these particular public officials." *Id*. at 1157.  The court noted that while the public officials might someday have occasion to sue an abortion provider to recover costs incurred in treating the provider's former patient, this possibility was not sufficient to create a justiciable controversy.  *Id*. at 1157-58.  Turning to the third criterion, the court held that plaintiff failed to show that a judgment in its favor would redress its injury because, even if it obtained an injunction against the defendants, the injunction would not prevent lawsuits by private parties.  *Id*. at 1158-59.  The court rejected plaintiff's argument that "a favorable declaratory judgment against these defendants would redress its injury by deterring other potential litigants from relying on [the statute], even in state court." *Id*. at 1159.  Beyond that deterrence was pure speculation, the court noted that plaintiff's argument "overlook[ed] the principle that it must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly." *Id*.  "'Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power.'" *Id*. at 1159 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring)).  With the second and third requirements not met, the court dismissed the lawsuit for lack of standing.  *Id*. at 1160.

Other courts have similarly rejected challenges to statutes creating private causes of action against abortion providers.  *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) (holding that lawsuit against Governor and Attorney General was not justiciable because any harm that might be caused would be the result of actions brought by private individuals, not the

state officials, and the state officials could not redress any injury because they had no power to stop the private lawsuits from being brought, and holding in the alternative that lawsuit was barred by state's sovereign immunity and that *Ex parte Young* exception did not apply);[11] *Hope Clinic v. Doyle*, 195 F.3d 857, 875-76 (7th Cir. 1999) (en banc) ("[The civil liability provisions] are enforced in private litigation; the states' Attorneys General and local prosecutors have nothing to do with civil suits. Relief against the public officials therefore would be pointless even if the civil liability provisions were problematic.");[12] *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341-42 (11th Cir. 1999) (holding that challenge to civil liability provision of abortion statute was barred by sovereign immunity and did not fall within *Ex parte Young* exception), *cert. denied*, 529 U.S. 1012 (2000); *Women's Medical Professional Corp. v. Taft*, 162 F. Supp.2d 929, 962-67 (S.D. Ohio 2001) (dismissing challenge to civil liability provision of abortion statute for lack of Article III standing), *rev'd on other grounds*, 353 F.3d 436 (6th Cir. 2003).[13]

---

[11] The en banc court stated that the panel had erred in "confus[ing] the statute's immediate coercive effect on the plaintiffs with any coercive effect that might be applied to the defendants – that is, the Governor and the Attorney General." *Id*. at 426. The court explained:

> Once the coercive impact of the statute (coercive in that it exposes plaintiffs to unlimited tort liability by individual plaintiffs) is understood to be distinct from the coercive power of state officials (for example, if the State could institute criminal or civil proceedings under the Act), the panel's finding of causation here is without a basis.

*Id*.

[12] After the Supreme Court vacated the *Hope Clinic* decision on other grounds, 530 U.S. 1271 (2000), the Seventh Circuit, on remand, reaffirmed its original conclusion "that plaintiffs are not entitled to challenge the state laws to the extent that these laws authorize private suits for damages." *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) (per curiam). The court clarified that it rejected the challenge for lack of Article III justiciability, stating that "plaintiffs lack standing to contest the statutes authorizing private rights of action, not only because the defendants cannot cause the plaintiffs injury by enforcing the private-action statutes, but also because any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors." *Id*. The court went on: "An injunction prohibiting <u>these defendants</u> from enforcing the private-suit rules would be pointless; an injunction prohibiting <u>the world</u> from filing private suits would be a flagrant violation of both Article III and the due process clause (for putative private plaintiffs are entitled to be notified and heard before courts adjudicate their entitlements)." *Id*. (emphasis in original).

[13] The *Taft* court noted that its dismissal did not leave the plaintiffs without protection – an abortion provider sued by a private individual under the civil liability provision could challenge the constitutionality of the provision as a defense. 162 F. Supp.2d. at 967. Presumably, the plaintiffs here could do the same. The Attorney General would

In sum, the legal principle is clear – when parties fear private actions pursuant to an allegedly unconstitutional state law, the parties may not sue state officials for either injunctive or declaratory relief.  Such a lawsuit does not fall within the narrow *Ex parte Young* exception to sovereign immunity, and, in any event, the lawsuit does not present a justiciable case or controversy.

### III.  Plaintiffs Cannot Avoid Sovereign Immunity, or Create a Justiciable Controversy, By Suing an Imaginary Defendant.

Plaintiffs attempt to dodge the obvious jurisdictional obstacles to their lawsuit by suing a mythical "John Doe," who plaintiffs conclusorily describe as a person "with the standing and intent" to bring a private cause of action against plaintiffs under Chapter 230.  Complaint, ¶ 9.  Plaintiffs do not allege that such a person actually exists.

Plaintiffs cannot create a justiciable controversy simply by creating an imaginary defendant.[14]  It is hard to imagine that the decisions in the Courts of Appeals cases discussed above would have come out differently had, for example, the plaintiffs imagined a person "with the standing and intent" to sue a physician for performing an abortion, *Nova Health Systems*, 416 F.3d at 1149; *Okpalobi*, 244 F.3d at 405; *Hope Clinic*, 195 F.3d at 857; *Summit Med. Assocs., P.C.*, 180 F.3d at 1326, or invented a boarding house resident ready to sue the Salvation Army.  *Salvation Army*, 919 F.2d at 183.  Article III justiciability doctrines cannot be subverted simply by creating a make-believe defendant.

---

be notified of the constitutional challenge and permitted to intervene to address the constitutional issues.  Me. R. Civ. P. 24(d).

[14] Even if John Doe were an actual person about to sue the plaintiffs under Chapter 230, the "well-pleaded complaint" rule might mean that the matter is still not justiciable.  *See, e.g., Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 232-33 (1st Cir. 1987) (federal jurisdiction may be lacking if federal claim would arise only as a defense to a state law cause of action).  Further, the existence of an actual John Doe should not prevent the state defendants from being dismissed from this action.

While certainly it is not unheard of for "John Does" to be sued in federal court, the practice is not favored and is only permitted under particular circumstances not present here. *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (declining to dismiss "John Doe" prison employees who allegedly harmed plaintiff where discovery might reveal their identities); *Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980) (declining to dismiss "John Doe" prison superintendents, U.S. Marshals, and guards where it was "very likely" that discovery would reveal their identities); *Feliciano v. County of Suffolk*, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005) (declining to dismiss "John Doe" police officers and their supervisors allegedly involved in racially-motivated traffic stops so that plaintiffs could have opportunity to identify them through discovery); *see also Stewart v. FBI*, 1999 U.S. Dist. LEXIS 18784 (D. Or. Oct. 13, 1999) (dismissing "John Doe" defendants where, among other things, plaintiff failed to describe defendants "with sufficient specificity for th[e] court to determine whether they are real persons or entities who could be sued in federal court"). To the best of defendants' knowledge, all cases in which John Does were successfully sued were situations in which plaintiffs knew of specific persons who were responsible for causing them harm, but needed the discovery process or judicial intervention to identify the persons. If the lawsuit is not going to identify the John Doe, or failed to identify him, the action is dismissed. *See, e.g.*, *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention."); *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) ("Thus, if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice."); *Gillespie*, 629 F.2d at 643 (action against unidentified defendants should be dismissed if "it is clear that discovery would not

uncover the identities"); *O'Neal v. Unknown SuperAmerica Employees*, 2006 U.S. Dist. LEXIS 10181, *2 (W.D. Wis. Mar. 14, 2006) (John Doe suit permissible if "the complaint contains allegations that would permit identification of the defendants after reasonable discovery").

Here, "John Doe" is not a specific person whose identity is simply unknown. Rather, "he" is a fictional person plaintiffs have created in an effort to avoid the fatal jurisdictional defects in their lawsuit. This device departs radically from the circumstances under which federal courts have permitted exceptions to the general rule that defendants must be identified. *See Plant v. Various John Does*, 19 F. Supp. 2d 1316, 1318 n.1 (S.D. Fla. 1998) ("the use of fictitious names in cases involving defendants who exist and have already engaged in illegal behavior, but whose names are not readily available to the plaintiffs, is completely distinguishable from the case at bar in which Plaintiffs are attempting to secure preemptive relief against parties who, as yet, have not engaged in any actionable behavior, nor even necessarily exist").[15]

Indeed, the defendants have not been able to locate a single case in which creation of a purely hypothetical defendant resulted in a justiciable controversy. While plaintiffs attempted such a tactic in *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 830 F. Supp. 241 (D. N.J. 1993), *rev'd on other grounds*, 40 F.3d 1454 (3d Cir. 1994), they did not succeed. There, two churches and an individual sought to challenge a law prohibiting

---

[15] In *Plant*, rock musicians attempted to obtained a nationwide injunction against "bootleggers" selling unauthorized merchandise in the vicinity of their upcoming concerts. *Id*. at 1317. The plaintiffs argued that they had to use fictitious names for the defendants because they could not identify them until they actually appeared at concerts and began selling their wares. *Id*. at 1320. The court dismissed the lawsuit, holding that plaintiffs failed to demonstrate that the court had personal jurisdiction over the defendants and that the lawsuit was not justiciable. *Id*. at 1319-20. With respect to justiciability, the court noted that without actual defendants, there was no adversarial proceeding, and "courts exist solely to resolve disputes between actual parties involved in actual controversies" and "may not address contingencies or hypothetical situations." *Id*. at 1321. The court also "seriously doubt[ed]" that plaintiffs had standing to litigate the case because they failed to demonstrate whether the unknown defendants had actually harmed, or were about to harm, the plaintiffs, and standing cannot be based on "speculative future incidents that may or may not occur." *Id*. at n.2.

16

discrimination based on sexual orientation. *Id*. at 244.  The plaintiffs sued various state officials and "unnamed private individuals who Plaintiffs fear will sue them under the [anti-discrimination law]." *Id*. at 244.  The relevant state agency had essentially agreed not to enforce the law against the churches, but the churches argued that the case was still justiciable because "they remain[ed] subject to the possibility of private suits, which chills their exercise of their First Amendment rights." *Id*. at 249.

The court rejected this argument and held that the matter was not ripe. *Id*. at 247.  The court held that plaintiffs must "demonstrate a real and substantial probability that the feared future event will occur" and show that "a declaratory judgment would be a 'binding resolution of the matter.'" *Id*. at 248.  With respect to the first element, the court noted that there "was no credible evidence" that any person was contemplating bringing an action, and that "the theoretical possibility that such a suit may at some point be filed against Plaintiffs by some unnamed and unknown private party is not enough to render this action ripe." *Id*. at 249.[16]  With respect to the second element, the court explained that it was "questionable" whether a declaratory judgment "would bind the unidentified private parties of whom Plaintiffs profess such fear." *Id*.  The court stated that "any decision in this lawsuit would likely not be a 'binding resolution of the matter.'" *Id*. at 249-50.  With neither of these elements met, the court dismissed the lawsuit for lack of justiciability. *Id*. at 250.

Plaintiffs' attempt to sue John Doe fails here for the same reason the attempt failed in *Florio*.  First, while plaintiffs have alleged that they will either alter their business practices or

---

[16] In finding that plaintiffs failed to demonstrate a "real and substantial probability" that private individuals would file lawsuits, the court noted that the law had been in effect for nearly eighteen months, that plaintiffs had been openly violating the law, and that no private lawsuits had been brought. *Id*. at 249.  There is no suggestion that the court would have ruled differently had the law not yet gone into effect.  It is plaintiffs' burden to prove the likelihood of private lawsuits, and plaintiffs cannot meet that burden simply by pointing out that because a law is brand new it is hard to say whether lawsuits will follow.

cease conducting business in Maine because of the threat of private lawsuits, Complaint, ¶ 44, they have not presented credible evidence that such lawsuits are a "real and substantial probability." At most, the lawsuits are a theoretical possibility, and this is not sufficient to make the matter ripe. *Florio*, 830 F. Supp. at 249. Moreover, even if plaintiffs did establish that private individuals are likely to file lawsuits, they would still need to demonstrate that a decision in this case, against an imaginary John Doe, would prevent those individuals from filing their lawsuits. As the *Florio* court noted, it is not likely that a decision would have such an effect. *Id.* at 249-50.[17]

The concern over allowing plaintiffs to create a "case or controversy" by suing an imaginary John Doe when there is no real defendant would have far-reaching implications beyond the present lawsuit. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Thus, "[t]he case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." *Id*. These limits would essentially become nonexistent if plaintiffs could simply manufacture a "case or controversy" through use of a made-up adversary. Beyond that, the Court should be wary of lawsuits seeking to create rules of constitutional law where, quite simply, there is no adversary to test plaintiffs' contentions. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) ("concrete adverseness . . . sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions").

---

[17] The *Florio* court skipped over the basic question of whether it is even permissible to sue an imaginary defendant. As discussed above, it appears that suing "John Does" is permissible only when a real person is the defendant, and only his identity is unknown – a John Doe cannot be an imaginary person invented to create justiciability. The *Florio* court may have decided that it did not need to address this issue given that the case was not justiciable even with imaginary defendants.

Here, the Attorney General has openly chosen <u>not</u> to enforce this law, a decision concurred in by the Governor, due to her concerns over First Amendment rights, particularly those of minors. In such circumstances, there is no principle requiring the Attorney General to litigate over imaginary private causes of action. Plaintiffs should have some solace in the fact that the frank and honest position of the Attorney General on this law, which has been widely disseminated both in Maine and nationally, should tend to deter private causes of action.

## **Conclusion**

For the reasons discussed above, the defendants respectfully request that the complaint be dismissed.

DATED: September 3, 2009              Respectfully submitted,

JANET T. MILLS
Attorney General

/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Assistant Attorney General
Christopher.C.Taub@maine.gov
PAUL STERN
Deputy Attorney General
Paul.D.Stern@maine.gov
Thomas A. Knowlton
Assistant Attorney General
Thomas.A.Knowlton@maine.gov
Six State House Station
Augusta, Maine 04333-0006
Tel. (207) 626-8800
Fax (207) 287-3145

Attorneys for Governor John E. Baldacci
and Attorney General Janet T. Mills

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 3rd day of September, 2009, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

- **JAMES T. KILBRETH**
  jkilbreth@verrilldana.com

- **JONATHAN S. PIPER**
  jpiper@preti.com, lspencer@preti.com

- **SIGMUND D. SCHUTZ**
  sschutz@preti.com, jcharron@preti.com

- **DANIEL W. WALKER**
  dwalker@preti.com

To my knowledge, there are no non-registered parties or attorneys participating in this case.

/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Assistant Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145
Christopher.C.Taub@maine.gov