UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE INDEPENDENT COLLEGES ASSOCIATION, MAINE PRESS ASSOCIATION, NETCHOICE, and REED ELSEVIER INC., <br><br>        Plaintiffs, <br><br>v. <br><br>GOVERNOR JOHN BALDACCI and ATTORNEY GENERAL JANET MILLS, in their official and individual capacities, and JOHN DOE, <br><br>        Defendants. | Civil Action No.: 09-cv-396 |

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION
TO STATE DEFENDANTS' MOTION TO DISMISS**

      The State Defendants have chosen to mount a procedural defense of a statute that they acknowledge is unconstitutional. This choice is dismaying because, if the State Defendants succeed and Chapter 230 takes effect, Maine's own citizens and institutions will be amongst the injured. Fortunately, the State Defendants need not, and should not, succeed, as it is well within this Court's power to protect both Maine's citizens and the Plaintiffs. As set forth below: (1) a non-binding promise by an attorney general not to enforce an unconstitutional law does not deprive the court of jurisdiction or eliminate the need for an injunction; (2) the imminent danger of First Amendment harm to the Plaintiffs from private suit supports judiciability and an injunction; and (3) this Court has the power to prospectively enjoin an as-yet unidentified John Doe private plaintiff.

I.   **The Attorney General's Non-Binding Promise Does Not Deprive This Court of Jurisdiction or Eliminate the Need for an Injunction.**

A request that a court bar enforcement of an unconstitutional statute is ripe for adjudication if the plaintiff's fear of enforcement is not "subjective and irrational." Mangual v. Rotger-Sabat, 317 F.3d 45, 57 (1st Cir. 2003); see also Sullivan v. City of Augusta, 511 F.3d 16, 31 (1st Cir. 2007) (in First Amendment context "standing and ripeness concerns are intertwined, with the core issue being the reasonable fear of enforcement"). Normally, courts undertaking a ripeness analysis examine two factors, "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." National Park Hospitality Ass'n v. Department of Interior, 538 U.S. 803, 808 (2003); see also Sullivan v. Augusta, 511 F.3d 16, 31 (1st Cir. 2007). However, as the First Circuit explained in Sullivan:

> [W]hen free speech is at issue, concerns over chilling effect call for a relaxation of ripeness requirements. . . .  The rationale for this relaxation is said to stem from a fear of 'irretrievable loss.' Thus, when First Amendment claims are presented, '[r]easonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim.'

Id. Accordingly, in the First Circuit, "as to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low. '[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 57 (1st Cir. 2003), quoting New Hampshire Right to Life PAC v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996); see also Rhode Island Medical Soc. v. Whitehouse, 66 F. Supp. 2d 288, 302 (D.R.I. 1999) ("Where a statute facially restricts expressive activity, the First Circuit presumes a credible threat in the absence of compelling contrary evidence.").

The Attorney General's non-binding promise is not "compelling contrary evidence." In Rhode Island Medical Soc., supra, the court found that "an attorney general's non-binding

2

promise not to prosecute does not eliminate plaintiffs' standing . . . [because] the Attorney General or [her] successors might change their minds . . . ." Rhode Island Medical Soc., 66 F. Supp. at 303 (emphasis in original).[1] The court also found that the statute's private cause of action made the threat of prosecution "more credible and more imminent" because the private plaintiffs would not be bound by the attorney general's narrow construction. Id. at 303. See also Chamber of Commerce of the United States v. FEC, 69 F.3d 600, 603 (D.C.Cir. 1995) (plaintiffs challenging rule of Federal Election Commission ("FEC") had standing, even though "not faced with any present danger of an enforcement proceeding," because commissioners could change their minds). By the same token, the fact that the legislature may consider changes to this statute, apparently so important to the defendants' analysis (see Exhibit B to Motion to Dismiss), does not ensure either that they will enact any such changes or that any changes they do enact would in fact cure the constitutional defects Chapter 230 contains. See, e.g., Maine Yankee Atomic Power Co. v. Bonsey, 107 F. Supp. 2d 47, 50 (D. Me. 2000) (rejecting State's argument that, because environmental board's future actions may not be unconstitutional, case should be dismissed on ripeness grounds).

Shell Oil Co. v. Noel, 608 F.2d 208 (1st Cir. 1979), the only First Circuit case that the State Defendants cite for the proposition that an attorney general's promise does eliminate a plaintiff's standing to sue, did not involve First Amendment protected activity. See id. at 210-11 (constitutional preemption challenge to petroleum price controls). The presumption of

---

[1] In dicta in footnote 4 of his opinion in Rhode Island Medical Soc., Judge Lagueux stated that "[t]his Court - like all federal courts – 'lack[s] jurisdiction authoritatively to construe state legislation' and bar prosecutors or plaintiffs from filing suit." Id. at 303 n.4, quoting Planned Parenthood v. Ashcroft, 462 U.S. 476, 502 n.8 (1983) (Blackmun, J., concurring and dissenting). This is a reference to the inability of a federal court to construe a state statute so as to avoid constitutional complications. A federal court's remedy in these circumstances is to enjoin all enforcement of the statute in question. See id.; see also Rhode Island Medical Soc., 66 F. Supp. 2d at 317.

enforcement that applies in the First Circuit to statutes implicating the First Amendment did not attach in Shell Oil, and that case has no relevance here.

Plaintiffs are therefore entitled to proceed against the State Defendants and obtain the declaratory and injunctive relief they seek against the State Defendants to ensure that Chapter 230 is not enforced.

## II. The Possibility Of Suit By Private Individuals Supports Jurisdiction and an Injunction.

The Court's jurisdiction over this case is clear. Moreover, as the Attorney General has effectively conceded, the likelihood of Plaintiffs' success on the merits is more than substantial—it is certain. Chapter 230's First Amendment defects are thorough, non-severable, and fatal.

There is therefore no defensible public interest served by refusing to enjoin enforcement of the statute by the State Defendants. Moreover, the issuance of a preliminary injunction in this case would deter *private* enforcement, which is also one of the plaintiffs' key concerns. Even if this Court were to consider the Attorney General's non-binding promise to be compelling evidence that the Plaintiffs did not face a risk of public prosecution under Chapter 230, the risk of private enforcement still presents an imminent threat that this court could deter through enjoining the application of this statute. The chilling effect on First Amendment rights is no less severe from the threat of private, versus public, enforcement. The First Circuit's presumption of "a credible threat of prosecution in the absence of compelling contrary evidence," Mangual v. Rotger-Sabat, 317 F.3d at 57, still applies. The State Defendants have presented no evidence, let alone compelling evidence, to overcome the presumption that Chapter 230 will be privately enforced. In fact, as explained below, the verified and affidavit facts presented by Plaintiffs show that there is a significant threat of private prosecution, the potential liability is massive, and

4

the threat is already causing a very real "chilling effect" on the Plaintiffs. In marked contrast, in the only two cases cited by the State Defendants involving First Amendment challenges to statutes based on the threat of private causes of action, the private litigation risk to plaintiffs was vanishingly small and had no chilling effect at all.[2]

### A.     Chapter 230 Creates A High Probability Of Private Damage Actions.

Although none of the Plaintiffs have yet been threatened with suit under Chapter 230, that suit will not be long in coming. Chapter 230 provides for statutory liquidated damages, attorneys' fees, and a damage multiplier for willing or knowing conduct. Verified Complaint ¶¶ 21-22; Chapter 230, § 9554(2)(B). Past experience with similar types of statutes demonstrates that this level of liability potential (and the consequent prospect of a substantial settlement) will inevitably attract class action lawyers and, in turn, class action litigation. See, e.g., Final Judgment And Order On Motion For Attorneys' Fees And Costs, Fresco v. Automotive Directions, Inc., No. 03-CIV-61063 (S.D. Fla., Jan. 20, 2009) at 5, 21, copy attached as Exhibit A (settlement including $8,291,998.75 in attorneys' fees in class action brought under Driver's Privacy Protection Act[3]). The Plaintiffs also face significant exposure to individual litigation

---

[2] In Salvation Army v. Department of Cmty. Affairs of N.J., 919 F.2d 183 (3d Cir. 1990), the statute at issue (New Jersey's Rooming and Boarding House Act of 1979) had been in effect for eleven years prior to the court's decision, no one had yet brought suit, and there was no evidence of "a perceptible effect on the exercise of [plaintiff's] First Amendment rights." Id. at 193. (Even given these facts, the concurring opinion would have found ripeness based on the threat of private enforcement. Id. at 203-04 (Becker, J.).) Similarly, in Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 830 F. Supp. 241 (D.N.J. 1993), almost a year and a half had passed since the statute's effective date, "not a single private suit or administrative complaint ha[d] been filed," and "Plaintiffs offer[ed] no evidence that the threat of a private suit has had, or will have, any discernible effect on their conduct" and, indeed, conceded it had not. Id. at 249-50. The remaining cases cited by the State Defendants addressing the threat of private causes of action did not involve the protection of First Amendment rights. See Fitts v. McGhee, 172 U.S. 516 (1899) (bridge tolls); Nova Health Sys. v. Gandy, 416 F.3d 1149 (10th Cir. 2005) (abortion rights); Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001) (en banc) (same); Hope Clinic v. Ryan, 195 F.3d 857 (7th Cir. 1999) (en banc) (same); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326 (11th Cir. 1999) (same).

[3] The Driver's Privacy Protection Act, 18 U.S.C. s 2721 et seq., provides a private cause of action, including statutory damages and attorneys' fees, against a person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record" for an impermissible purpose.

actions. See, e.g., Pruitt v. Comcast Cable Holdings, LLC, 100 Fed. Appx. 713 (10th Cir. 2004) (unsuccessful appellate action by individual claimants under privacy provisions of 1984 Cable Communications Privacy Act ("Cable Act"), 47 U.S.C. § 551, *et. seq.*[4]). Although the State Defendants dismiss these fears as "fictional," State Defendants' Motion at 14, the plaintiffs' bar (in Maine and elsewhere) is not a creature of fairy tale and its ability to find plaintiffs among a pool comprising every teenager in Maine is all too real. That possibility is reduced considerably with the presence of a federal court opinion ruling that the statute is unconstitutional and preventing its enforcement.

### B.  The Plaintiffs' Potential Liability For Private Action Damages Is Enormous.

The Plaintiffs and their constituent members could be held liable for hundreds or thousands of independent Chapter 230 violations. As set forth in the Verified Complaint:

- The eleven institutions that comprise the Maine Independent College Association (which together educate about 16,000 students) rely on information about minors to recruit their freshmen classes. Id. ¶ 26; Declaration of Rosa Redonett, attached as Exhibit B (detailing use of information about minors in college admissions process).

- The thirty newspapers that comprise the Maine Press Association collect and use information about minors "for commercial purposes" whenever they report on or interview a minor. Verified Complaint ¶ 27.

- Reed Elsevier Inc. and its division Lexis-Nexis maintain law enforcement, insurance, financial and informational databases that, collectively, contain information concerning virtually every minor in Maine. Id. ¶¶ 28-38.

- NetChoice's member businesses conduct information-based online transactions with thousands of Maine minors. Id. ¶¶ 39-44; Declaration of Steven DelBianco, attached as Exhibit C.

---

[4] The 1984 Cable Communications Privacy Act ("Cable Act"), 47 U.S.C. § 551, *et. seq.*, regulates the collection and disclosure of personally identifiable information by cable operators. Like Chapter 230, it provides for a private right of action and penalties, including statutory damages and attorneys fees, in case of a violation.

Collectively, these activities will give rise to thousands of Chapter 230 violations. As each could result in between $250 and $750 in statutory damages, plus attorneys' fees, the Plaintiffs' potential liability under Chapter 230 is staggering.

### C.     Plaintiffs Will Be Irreparably Harmed By Chapter 230's Chilling Effect.

Given the level of exposure to private causes of action under Chapter 230, it is obvious that plaintiffs will be "chilled from exercising her right to free expression or forgo[] expression in order to avoid enforcement consequences." Mangual v. Rotger-Sabat, 317 F.3d at 57. This "chilling" effect is no mere abstraction: The Plaintiffs have attested that, because there is no readily available mechanism to determine and verify identity, age and parental relationships on line, once Chapter 230 becomes effective, they will be forced either to cease doing business in Maine or to curtail their business practices. Verified Complaint ¶ 44. REI has explained how Chapter 230 will restrict the use of informational databases by Maine law enforcement agencies, financial institutions, and the Bureau of Motor Vehicles. Verified Complaint ¶¶ 29-37. The Declaration of Steven DelBianco details how major internet businesses are now preparing to change their practices:

- A global online communications service plans to curtail sending service-related emails to Maine users who are minors because some are triggered by characteristics of the users. The website will have to block all online advertisers from specifying ads going to teens in Maine.

- If this law is allowed to take effect, an online service that connects millions of worldwide users will be forced to curtail marketing and advertising-related messages and emails to users who have identified themselves as minors residing in Maine. In addition, this service will be forced to block all online advertisers from specifying ads going to these self-identified teens in Maine.

- A multi-billion dollar internet messaging service may be forced to stop sending promotional emails to Maine teenage users. Further, because it cannot identify teenage users with precision (since date of birth and state of residence are optional data elements in user profiles) it is considering steps to curtail new Maine registrants.

In addition, colleges in Maine will have to fundamentally restructure their admissions processes.  <u>See</u> Declaration of Rosa Redonett (describing impact of Chapter 230 on college admissions process); <u>see also</u> Verified Complaint ¶26.

In these circumstances, the "threat of suit is sufficiently tangible and immediate . . . to warrant holding [Plaintiffs'] claim ripe."  <u>Salvation Army v. Department of Cmty. Affairs of N.J.</u>, 919 F.2d 183, 203-04 (3d Cir. 1990) (Becker, J., concurring).

### III. An Injunction Against John Doe Is Also Appropriate To Enjoin Private Enforcement Of Chapter 230.

Plaintiffs do not yet know the identities of the individuals who will bring private actions under Chapter 230.  They have therefore sued "John Doe," "an individual with the standing and intent to exercise Chapter 230's private right of action against the Plaintiffs."  Verified Complaint ¶ 9.  This is appropriate and provides an alternative means of protecting Plaintiffs from private enforcement of Chapter 230.

Although the State Defendants state they "have not been able to locate a single case in which creation of a purely hypothetical defendant resulted in a justiciable controversy," the Plaintiffs have so far located four such cases, which involved threatened violations of Lanham Act and trademark rights by unknown defendants.  <u>See, e.g.</u>, <u>NBA Properties v. Various John Does</u>, 113 F.3d 1246 (10th Cir. 1997) (unpublished decision overturning district court's denial of ex parte TRO against unnamed parties); <u>SKS Merch, LLC., v. Barry</u>, 233 F. Supp. 2d 841, 848-49 (E.D. Ky. 2002) (entering <u>nationwide</u> injunction against unnamed defendants); <u>Brockum Int'l, Inc. v. Various John Does</u>, 551 F. Supp. 1054 (E.D. Wis. 1982) (prospectively enjoining unknown trademark violators); <u>Joel v. Various John Does</u>**,** 499 F. Supp. 791 (E.D. Wis. 1980) (same).  These trademark cases are different on their facts, but illustrate that the injunction

8

sought by Plaintiffs against John Doe is within the Court's power and not unprecedented.[5]  And in the only case (located by either side) like this one, in which plaintiffs named as John Doe defendants unknown parties who might infringe plaintiffs' First Amendment rights by pursuing private causes of action under a state statute, Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 830 F. Supp. 241 (D. N.J. 1993), the court did not question the appropriateness of naming John Doe as a defendant but instead found the case not ripe on the very different facts presented. [6]

.       The John Doe trademark cases implemented their injunctions by ordering that copies of the pleadings and injunction be served on the John Doe defendants if and when identified, whereupon the defendants could challenge the injunction in court.  See, e.g., SKS Merch, LLC., 233 F. Supp. 2d at 851-53; Joel v. Various John Does, 499 F. Supp. at 792 ("While the proposed remedy is novel, that in itself should not weigh against its adoption by this court.  A court of equity is free to fashion whatever remedies will adequately protect the rights of the parties before it.").  The same remedy could be employed in this case.[7]

---

[5] Plant v. Various John Does, 19 F. Supp. 2d 1316 (S.D. Fla. 1998), which the State Defendants rely on for the proposition that preemptive relief against a John Doe is impermissible (Motion at 16), is in a minority.  As explained in SKS Merch, LLC., the court's refusal to grant an injunction in Plant was apparently based on the plaintiff's inability to "explain why 'they [we]re unable to obtain the identities of [the John Does]." SKS Merch, LLC., 233 F. Supp.2d at 849, quoting Plant, 19 F. Supp. 2d at 1320.  In this case, of course, Plaintiffs cannot conduct a meaningful search for prospective Chapter 230 litigants, as the pool of possible plaintiffs includes every teenager in Maine.

[6]  As noted in footnote 2, the Presbytery court found the case was not ripe because: (1) private litigation was unlikely as "[a]lmost a year and a half ha[d] passed since the amendments' effective date and not a single private suit or administrative complaint ha[d] been filed"; (2) the plaintiffs conceded that the threat of a private suit had had no effect on their conduct during the 18 months that the statute had been in effect; and (3) there was a question whether relief would bind the unidentified third parties.  830 F. Supp. 2d at 249.  As to (1) and (2), the instant case - involving a statute about to take effect that is already affecting Plaintiffs' conduct – could not be more different.  As to (3), the remedy discussed in the next paragraph of text answers the question.

[7] The State Defendants speculate in a footnote that the "well-pleaded complaint rule" might bar an action against John Doe.  D. Motion at 14 n.14.  It does not.  It is well settled that a plaintiff may sue in federal court to enjoin a private party's attempt to exploit an unconstitutional statute.  See Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921) (upholding federal jurisdiction over suit to enjoin corporation from purchasing bonds issued under unconstitutional statute); see also Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 809 n.5 (1986) (citing

Particularly under the special circumstance of this case, where a very real private enforcement threat is creating a substantial chilling effect on First Amendment rights, an injunction against John Doe, although unusual, is appropriate.

## IV.     This Court Can Provide An Effective Remedy.

In sum, there are at least four remedies that the Court can employ to provide the Plaintiffs with relief:

*First,* for all the reasons set forth above, the Court can, and should, enjoin the State Defendants from enforcing Chapter 230 to ensure non-enforcement until the legislature can amend the law.  As discussed above, there is no public interest in enforcing this statute, and the public interest would be *advanced* by a finding that Plaintiffs are likely to succeed on the merits of their claims and the resulting deterrent effect of this court's holding on private filings.

*Second,* the Court can also enjoin John Doe from enforcing Chapter 230 through a private right of action.  See SKS Merch, LLC., 233 F. Supp. 2d at 851-53.  If and when a private party does attempt to enforce Chapter 230, the Plaintiffs can join him or her as a party to this litigation. See id., see also Smith v. Jenkins, 626 F. Supp. 2d 155, 167 (D. Mass. 2009) ("Once [a John Doe's] identity is learned, a plaintiff is permitted under the liberal regime of Rule 15 to amend the complaint to substitute the name of the real party.").  While the newly joined defendant could obviously challenge the injunction once joined, this mechanism will prevent the Plaintiffs from having to relitigate Chapter 230's constitutional defects before multiple judges in multiple forums.

---

Smith).  This remedy would also conform to the Anti-Injunction Act, 28 USC § 2283.  Although the Anti-Injunction Act prohibits federal courts from enjoining an action already pending in state courts, it does not prevent a federal court from enjoining a party from bringing a suit in state court.  See Dombrowski v. Pfister, 380 U.S. 479, 485 (1965) (Anti-Injunction Act does "not preclude injunctions against the institution of state court proceedings, but only bar[s] stays of suits already instituted.").

*Third*, the Court alternatively can enjoin the implementation and enforcement of Chapter 230 until the Legislature can amend the law. This would eliminate the law's "chilling" effect by delaying its requirements and any private causes of action. An example of such an injunction issued upon stipulated motion of the parties by a court in the Central District of Utah is attached as Exhibit D.

*Fourth,* if the Court is not inclined to issue an injunction, Plaintiffs request that the Court issue an opinion making clear that the Plaintiffs are likely to succeed on the merits for the reasons outlined in the Plaintiff's memorandum of law, and that the only reason for not issuing an injunction is the Attorney General's representation to the Court. Following that, the plaintiffs would urge that the case move swiftly to summary judgment so they may obtain a declaration of unconstitutionality and a permanent injunction. Such a result would go a long way toward deterring future suits and dispelling the Chapter 230's "chilling" effect. See Perez v. Ledesma, 401 U.S. 82, 125 (1971) (Brennan, J., concurring) ("a declaration of unconstitutionality . . . may still be able to cut down the deterrent effect of an unconstitutional state statute. The persuasive force of the court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew"); see also Alsager v. District Court of Polk County, Iowa (Juvenile Div.), 518 F.2d 1160, 1165 (8th Cir. 1975) ("the mere fact that declaratory relief does not provide a coercive remedy is no reason to conclude that it will be ineffective").[8]

---

[8] If the Court declines to grant any of the proposed relief, Plaintiffs request that the Court stay this case until the Legislature amends Chapter 230, for two reasons. One, in the event of a change in the Attorney General's position, the Plaintiffs can then renew their motion. See Maine Yankee Atomic Power Co. v. Bonsey, 107 F. Supp. 2d 47, 55-56 (D. Me. 2000) (although no injunctive or declaratory relief yet appropriate, should State attempt to regulate nuclear power plant such relief would follow "surely and swiftly"). Two, if a private plaintiff comes forth in the meantime, that party can be joined and this action can proceed.

11

## CONCLUSION

For the reasons set forth above and in the Plaintiffs' Motion and Memorandum, Plaintiffs request that the Court grant their Motion for Preliminary Injunction and issue appropriate relief.

Of Counsel for:

MAINE INDEPENDENT COLLEGES ASSOCIATION
MAINE PRESS ASSOCIATION

Jonathan S. Piper
Sigmund D. Schutz
Daniel W. Walker
PRETI FLAHERTY BELIVEAU & PACHIOS LLP
One City Center
Portland, ME  04101
(207) 791-3000 *(telephone)*
(207) 791-3111 *(fax)*

Respectfully submitted,

MAINE INDEPENDENT COLLEGES ASSOCIATION, MAINE PRESS ASSOCIATION, REED ELSEVIER INC., and NETCHOICE,

By their attorneys,
 /s/ James T. Kilbreth
James T. Kilbreth, Esq.
Michael V. Saxl
VERRILL DANA LLP
One Portland Square
Portland, ME  04112-0586
(207) 774-4000 *(telephone)*
(207) 774-7499 *(fax)*

Bruce E. Falby, Esq. (BBO #544143)
Brooks Ames, Esq. (BBO #641192)
Matthew Iverson, Esq. (BBO # 653880)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Jim Halpert, Esq.
David Lieber, Esq.
Micah R. Thorner, Esq.
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC  20004
(202) 799-4000 (*telephone*)
(202) 799-5000 (*fax*)

Dated:  September 7, 2009

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served electronically on all counsel of record via the Court's CM/ECF system.

                                                          /s/ James T. Kilbreth
                                                       James T. Kilbreth, Esq.
                                                       Michael V. Saxl
                                                       VERRILL DANA LLP
                                                       One Portland Square
                                                       Portland, ME  04112-0586
                                                       (207) 774-4000 *(telephone)*
                                                       (207) 774-7499 *(fax)*

Dated:  September 7, 2009